**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**CRIMINAL ACTION NO. 1:04-99-DLB**
**(Judge Bunning for Judge Dlott)**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**VS.**                           **MEMORANDUM OPINION AND ORDER**

**WENDELL ROSS**                                                   **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

### I.   Introduction

This matter is currently before the Court upon Defendant's Motion in Limine, or in the Alternative, Motion to Suppress Evidence relating to his guilty plea in state court. (Doc. # 59). The government has filed its response in opposition to the motion (Doc. # 60). During a telephonic conference call[1] on February 1, 2006, the parties agreed that the motion could be submitted for decision. Thus, the motion is now ripe for the Court's review. For the reasons that follow, the motion in limine is **denied**.

### II.   Issues Raised

In his motion, Defendant seeks an order excluding any evidence regarding his July 1, 2004 Hamilton County state court proceeding wherein he entered a guilty plea to certain state misdemeanor charges arising out of the same incident which gives rise to the current federal charges. According to Ross, because his state guilty plea was entered without his

_____

[1] The purpose of the call was to discuss the Defendant's recent hospitalization relating to his diabetes.

1

knowledge of the consequences of the plea, his plea, and any statements made by him during the plea, should not be admissible during his federal trial. More specifically, because he was not advised by his defense attorney that his state court plea could later be used against him in a subsequent federal prosecution, Ross argues that his plea was neither knowing or voluntary. Defendant collaterally attacks the guilty plea on the grounds that he received ineffective assistance of counsel during the state court plea proceeding. Defendant also argues that because he entered a plea to an amended charge of "attempted" improper handling of a firearm in a motor vehicle, his plea is not an admission he possessed the firearm.

### III.     July 1, 2004 Ohio State Court Proceeding

During the December 13, 2005 Status Conference, the Court ordered counsel to submit a copy of the DVD of Defendant's July 1, 2004 Ohio state court proceedings to the undersigned's chambers. The DVD of that proceeding was thereafter delivered to chambers and has been reviewed by the Court in adjudicating the pending motion. By this Order, the Court orders that the DVD be made part of the record as Exhibit One to this Memorandum Opinion and Order. Upon the Court's review of that approximately 18 minute state court proceeding, the Court makes the following findings:

1. On July 1, 2004, Defendant appeared with counsel, Edward Felson, before Judge Guy Guckenberger. Upon the case being called, the prosecutor indicates that a plea agreement had been reached whereby Ross would enter a plea of guilty to two of four charges in the criminal complaint.[2] These charges were all misdemeanors and included:

---

[2] The original agreement called for Ross to plead to the firearm and drug paraphernalia charges.

2

A. loud sound; B. firearms in a motor vehicle; C. weed ticket; and D. drug paraphernalia.

After the judge reviews the complaint with Ross, the prosecutor indicates that the state

intends on proceeding on the firearm and weed charges and will dismiss the other charges.

2.  It is undisputed that the firearm charge in the state case involves the identical

.357 revolver which was seized from the glove compartment of the Defendant's vehicle and

forms the basis for the instant federal prosecution.

3.  Although there was a discrepancy noted between the degree of the offense

identified in the complaint, which erroneously identified the charge as an M4[3], and the

charge itself, which was an M1 due to the facts of the case, there was no dispute regarding

the evidence which provided the factual basis for the guilty plea.[4]

4.  There is no dispute that firearm charge alleged a violation of O.R.C. § 2923.16.

It is also undisputed that under any subsection of that statute, the *mens rea* requirement

is "knowingly."

5.  Upon discussing the statute and the degrees for the firearm charge with counsel,

Judge Guckenberger determined that the facts of the case support a charge under section

2923.16(B), which was identified by the Court as knowingly transporting a loaded .357

revolver in the glove box of Defendant's vehicle.  That section provides, in relevant part:

> No person shall knowingly transport or have a loaded firearm in a motor
> vehicle, in such manner that the firearm is accessible to the operator or any
> passenger without leaving the vehicle.

---

[3]  An M4 offense is a fourth degree misdemeanor and an M1 offense is a first degree misdemeanor.

[4]  The complaint originally showed the firearm charge as an M4 charge, but that was marked through and an M1 was inserted.

3

*See* O.R.C. § 2923.16(B).  Subsection B. is a first degree misdemeanor.

6.  After the Court discussed the varying degrees of O.R.C. § 2923.16 with counsel and Mr. Ross, the prosecutor, while acknowledging the complaint was defective as alleging an M4 offense, requested an amendment to an attempt in exchange for a plea of guilty to the firearm charge and the weed ticket (items B and C in paragraph 1 *supra*).  The Court permitted the amendment to allege an attempt to commit a subsection B violation and gives Defendant additional time, if needed, due to the amendment.  The amendment converted the firearm charge from a first degree to a fourth degree misdemeanor offense. *See* footnote 7 herein.

7.  During the proceeding, Mr. Felson indicated that Defendant would agree to the amendment so long as it did not impact the Court's sentencing decision.  According to Felson, Defendant was leaving on a family vacation later that evening and wanted some assurances that he would receive probation.

8.  Judge Guckenberger thereafter explained the possible penalties of both offenses.  More specifically, Defendant was advised that the transporting of a firearm in a motor vehicle offense carried a maximum penalty of 90 days in jail and maximum fine of $750, and the weed ticket charge carried a maximum penalty of a $150 fine and court costs, as well as a required suspension of his driving privileges for at least 6 months. Guckenberger further indicated that Defendant could plead guilty, not guilty, or no contest and explained what each type of plea meant.

9.  Defendant thereafter advised Judge Guckenberger that he wanted to plead no contest to the charges.  The prosecutor objected to a no contest plea, advising that the plea agreement required a guilty plea in exchange for the state agreeing to the attempt

4

amendment.  Mr. Felson thereafter states that Defendant will plead guilty.

10.   Upon being advised that Defendant will plead guilty, Judge Guckenberger asked Defendant if he was doing so voluntarily and Defendant responded in the affirmative.

11.   During the brief plea colloquy, Judge Guckenberger is requested to stay any sentence due to Defendant's planned vacation with his family to Disneyworld.  Judge Guckenberger also inquired about the gun in the vehicle and is advised by Mr. Felson that Defendant was not saying it was his gun, but he was in the car and had the keys. Felson further advised that the gun was in the glove box, he knew it was there, and it was his car. When asked by the Court whose car was it, Defendant said it was his car.

12.   After accepting the guilty plea to the two offenses, Judge Guckenberger sentenced Defendant to $100 costs on the weed ticket with a 6 month driving suspension effective July 10, 2004, and 90 days suspended on the firearm charge, $50 fine plus court costs, 1 year community control, drug and alcohol treatment recommended, and 16 hours community service.

## IV.   Analysis

### A.   Defendant's July 1, 2004 guilty plea in Ohio state court was knowingly and voluntarily made.

In its response in opposition to Defendant's motion, the government initially argues that Defendant should not be permitted to collaterally attack his state guilty plea by way of his current motion.   It is undisputed that Defendant did not appeal his state court misdemeanor convictions.  As the Supreme Court has stated, a voluntary and intelligent plea of guilty made by a defendant under advice of competent counsel may not be

5

collaterally attacked. *Mabry v. Johnson,* 467 U.S. 504, 508 (1984). However, a guilty plea can be challenged as not voluntary and intelligent under the Due Process Clause if the defendant is not fully apprised of the consequences of the plea. *Id.* at 509. Because Defendant is challenging the voluntariness of his plea on the basis that he was not adequately advised of the consequences of the plea, and the government seeks to use that plea and the admissions made therein during its case-in-chief, the Court will address the merits of Defendant's challenge to the voluntariness of his guilty plea.

It is well settled that a guilty plea entered into in state court must be voluntarily and intelligently made. *Boykin v. Alabama,* 395 U.S. 238, 242 (1968). A voluntary plea of guilty constitutes an admission of all the material elements of a crime. *McCarthy v. United States,* 394 U.S. 459, 466 (1969). A plea is voluntary when it has not been induced by threat, by misrepresentation, or by improper representations, and the defendant is fully aware of the direct consequences of the plea. *Brady v. United States,* 397 U.S. 742, 755 (1969). A "[d]efendant need only be aware of the direct consequences of the plea; ... the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 114 S.Ct. 2712 (1994); *see also United States v. Long,* 852 F.2d 975, 979 (7th Cir. 1988) ("The state and federal systems are separate and distinct, and the defendant need only be informed of the direct consequences he may face within the particular system."); *United States v. Bouthot,* 878 F.2d 1506, 1511 (1st Cir. 1989).

In this case, Defendant argues that because he was not advised during the July 1, 2004 state court proceeding that he "could be prosecuted under a federal statute for an

6

offense similar to the ones facing him in state court" or that "any admissions made by him during the guilty plea could be used against him in later proceedings", his plea was involuntary and his state defense counsel was ineffective. In support of his argument, Defendant relies upon Judge Weber's decision in *United States v. Edwards*, 669 F.Supp. 168 (S.D. Ohio 1987). Defendant also identifies several instances in the July 1, 2004 Ohio state court proceeding which, according to Defendant, show that Mr. Felson was ineffective. Defendant's reliance on *Edwards* is misplaced.

As an initial matter, the Court notes that Defendant has not alleged that his plea was induced by threats or improper representations. Nor has he alleged that the state prosecutor agreed or otherwise affirmatively indicated that Defendant would not be federally prosecuted. In fact, there is nothing in the July 1, 2004 DVD of the state court proceeding to indicate that any promises were made in the state plea agreement regarding federal prosecution. In fact, there is no mention whatsoever of any pending federal investigation and/or charges.[5]

Upon review of Judge Weber's 1987 decision in *Edwards,* as well as Sixth Circuit case law decided subsequent to *Edwards*, the Court declines to follow Judge Weber's decision. In *Edwards,* another firearms case, Judge Weber suppressed admissions made during a defendant's prior guilty plea in state court, reasoning that because the defendant "did not know the nature of the charge against him and the consequences of his guilty plea ... his guilty plea was not knowingly made." 669 F.Supp. at 171. Although Judge Weber's decision has not been expressly overruled by the Sixth Circuit, the Court's own research

---

[5] The record reflects that Defendant was originally charged in the instant case via a criminal complaint on July 19, 2004 and indicted on August 4, 2004.

reveals that no other court in the Southern District of Ohio or the Sixth Circuit has adopted Judge Weber's reasoning or decision. In fact, several post-*Edwards* cases from within the Sixth Circuit have come to contrary conclusions.

For example, in *King v. Dutton*, 17 F.3d 151, 154-55 (6th Cir. 1994), the Sixth Circuit held that the subsequent use of a guilty plea as an aggravating circumstance in a separate, pending proceeding without informing the defendant at the time of his plea that his plea could be so used, did not render the guilty plea involuntary. More particularly, the *King* panel held that this use of the plea was not "a direct, immediate, or automatic result" of the plea, and thus "[t]he state trial court was under no constitutional obligation to inform [the defendant] of the possible impact [in the other proceeding] of ... his guilty plea." 17 F.3d at 155. In *King,* the facts failed to establish that the trial judge knew that the defendant's plea could be used to enhance his sentence in a case pending in another jurisdiction. As was the case in *King*, Judge Guckenberger had no knowledge that Defendant faced the possibility of a separate federal prosecution arising out the same incident which gave rise to the state misdemeanor charges.

The Court's decision to not follow Judge Weber's decision in *Edwards* is also supported by the Sixth Circuit's unpublished decision in *United States v. Odom*, 42 F.3d 1389, 1994 WL 669675 (6th Cir. 1994). In *Odom*, the Sixth Circuit determined that a defendant's state court guilty plea was not rendered involuntary due to the state court's failure to advise him that he could be prosecuted in federal court. In arriving at its decision in *Odom*, the Court relied upon its *King v. Dutton* decision and cited with approval two other circuit court decisions, *United States v. Jordan*, 870 F.2d 1310 (7th Cir.), *cert. denied,* 493

8

U.S. 831 (1989) and *United States v. Bouthot,* 878 F.2d 1506, 1511 (1st Cir. 1989).  In *Jordan,* the Seventh Circuit held that even where the state prosecutor had actually advised federal authorities that a defendant was probably eligible for federal prosecution, the possibility that the defendant would be federally prosecuted was not within the state prosecutor's control, and thus was not an immediate and automatic consequence of defendant's guilty plea in state court.  870 U.S. at 1317.  In so holding, the Seventh Circuit expressly disagreed with Judge Weber's decision in *Edwards.*  Because *Odom*'s state court guilty plea was voluntarily and intelligently made, the Sixth Circuit held that evidence of the state court guilty plea and admissions made during that proceeding were properly admitted in federal court.

The Sixth Circuit's unpublished decision in *United States v. Gardner,* 887 F.2d 1088, 1989 WL 123238 (6th Cir. 1989) also lends support for the Court's decision in this case.  In *Gardner,* the defendant was charged with a Tennessee misdemeanor offense of carrying a weapon with the intent to go armed, and subsequently pleaded guilty to a misdemeanor charge and was sentenced to time served.  Defendant was thereafter charged in federal court with being a felon in possession of a firearm and possessing an unregistered firearm.  Over defense objection, the prosecutor was permitted to admit Defendant's state court guilty plea.

On appeal, Defendant argued that her guilty plea to the state court firearm charge should not have been admitted because she was not made aware of the consequences of the plea and, therefore, it cannot be said that the plea was knowingly and voluntarily entered.  In support of her argument, Defendant relied upon Judge Weber's *Edwards*

9

decision. In upholding the district court's admission of the state guilty plea, the Sixth Circuit

rejected Defendant's reliance on *Edwards* stating:

> the fact that she has not shown that the plea was not knowingly made coupled with the fact that a warning concerning the *collateral use of the plea is not required by the Constitution, the Federal Rules*, or the Tennessee Rules, leads us to conclude that the district court did not err in admitting this evidence (emphasis added).

Slip. Op. at 6.

Based on the case law cited herein, the Court concludes that the possible use in a

subsequent federal prosecution of Mr. Ross' state guilty plea and admissions made therein

is a collateral consequence of his plea. *See King v. Dutton,* 17 F.3d at 154. Trial courts

are under no constitutional obligation to inform defendants of all the possible collateral

consequences of a plea. *Id.* at 153. Such collateral consequences include the fact that

a conviction on a guilty plea can be used in a subsequent prosecution resulting from a

pending investigation. *Id.*

For all of these reasons, the failure of Judge Guckenberger to advise Mr. Ross that

the guilty plea and any admissions made therein could later be used against him in a

separate federal prosecution does not render his plea invalid. Upon review of the DVD of

the state court proceeding, the Court concludes that Defendant's plea in state court was

knowing and voluntary and Defendant was fully aware of the direct consequences of the

plea.

### B.      Mr. Felson was not ineffective for failing to advise Defendant of any collateral consequences of his guilty plea.

Because defense counsel has no obligation to advise a defendant of the collateral

consequences of a guilty plea, Mr. Felson's failure to advise Defendant herein that the

10

guilty plea and any admissions made therein could later be used against him in a separate federal prosecution does not amount to ineffective assistance of counsel. *See Varela v. Kaiser,* 976 F.2d 1357, 1358 (10th Cir.1992), *cert. denied,* 507 U.S. 1039 (1993), *Torrey v. Estelle,* 842 F.2d 234, 237 (9th Cir. 1988) (failure to warn of collateral consequences does not amount to ineffective assistance of counsel). While there are instances in the DVD in which Mr. Felson could be characterized as being ill-prepared[6], such as when he states that he had not researched the law relating to O.R.C. § 2923.16, what is evident to the Court is that Mr. Ross wanted to get the state misdemeanor charges behind him and decided to plead out.

What transpired in Judge Guckenberger's courtroom on July 1, 2004 is not unlike what occurs in many courtrooms throughout the country on any given day. There was a discussion between the state prosecutor and the defense attorney on behalf of the defendant regarding the charges. Defense counsel agreed to an amendment to the complaint to reflect the accurate charge, exacted a concession by the prosecutor who agreed to an "attempt" in exchange for a guilty plea to the amended charge, and argued for a suspended sentence which would be stayed. Defendant thereafter was advised of the possible penalties of the pleas and confirmed to Judge Guckenberger that he was entering the plea voluntarily. After stating that he would accept the plea, there was a discussion of staying the sentence pending Defendant's vacation, and an inquiry by the

---

[6] The DVD of the hearing also includes several instances where Mr. Felson was continuing to strive for the best possible outcome for Mr. Ross, such as indicating Mr. Ross' intention to enter a no contest plea to the firearm and weed ticket charges, only to be rebuffed by the state prosecutor who reminded the court that the agreement was for a guilty plea in exchange for the amended attempt charge.

11

Court regarding the factual basis for the guilty plea. Based on the Court's review of the DVD in its entirety, it is clear that Defendant wanted a result which resolved the charges without any jail time and with the assistance of Mr. Felson, Defendant was able to achieve the desired result.

Because the Constitution does not require defense counsel to inform an accused person of the collateral consequences of his guilty plea, Mr. Felson's failure to advise Defendant of every collateral consequence of his state court guilty plea in this case did not constitute ineffective assistance of counsel.

> **C.      Defendant's guilty plea to attempted improper handling of a firearm in a motor vehicle is properly admissible as an admission pursuant to FRE 801(d)(2)(A).**

Having found Defendant's July 1, 2004 state guilty plea knowing and voluntary, that plea constitutes an admission of all the material elements of the crime to which he pled guilty. *See McCarthy,* 394 U.S. at 466. Defendant pled guilty to an amended charge of attempted improper handling of a firearm in a motor vehicle. In order to prove this charge, it was incumbent on the state to establish the elements of O.R.C. § 2923.02(A) relative to the offense of improper handling of a firearm. Section 2903.02, provides, in pertinent part:

2923.02 Attempt

(A) No person, *purposely or knowingly*, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense. (emphasis added).

Thus, although the charge to which Defendant pled guilty was attempted improper handling of a firearm, an attempt requires the same *mens rea* requirement (purposely or knowingly) as the substantive offense. Additionally, the substantive offense, improper handling of a

12

firearm in a motor vehicle in violation of O.R.C. § 2923.16(B), requires that the person *knowingly* transport or have a loaded firearm in a motor vehicle, in such manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

Although attempted improper handling of a firearm is misdemeanor in the fourth degree,[7] by entering a valid plea to that offense, Defendant admitted that he knowingly attempted to transport or have a loaded firearm in his vehicle in violation of O.R.C. § 2923.02. One cannot plead guilty to an attempt unless he is attempting to commit an underlying offense. In this case, that underlying offense was the improper handling of a firearm in a motor vehicle in violation of O.R.C. § 2923.16. The fact that the plea was to an attempt as opposed to the substantive offense itself make no difference for evidentiary purposes.

It is well settled that a defendant's guilty plea in another proceeding constitutes a non-hearsay admission by a party opponent under F.R.E. 801(d)(2)(A). *United States v. Haddad,* 10 F.3d 1252, 1258 (7th Cir. 1993); *United States v. Maestas,* 941 F.2d 273, 278 (5th Cir.1991) (guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party-opponent), *cert. denied,* 112 S.Ct. 909 (1992); *United States v. Martinez,* 775 F.2d 31, 36-37 (2d Cir. 1985). The fact that the plea was to a misdemeanor charge is irrelevant. *See Hancock v. Dodson,* 958 F.2d 1367, 1371 (6th Cir. 1992) (guilty plea to a misdemeanor charge is admissible as non-hearsay evidence when it is offered as an admission by a party opponent). In discussing the admissibility of the

---

[7] O.R.C. § 2923.02(E) provides, in pertinent part, that "in the case of an attempt to commit an offense other than a violation of Chapter 3734 of the Revised Code that is not specifically classified, an attempt ... is a misdemeanor in the fourth degree if the offense attempted is a misdemeanor.

13

guilty plea, the Sixth Circuit in *Hancock* stated:

> [P]leas and allocutions to misdemeanors by defendants may be made under circumstances indicating they are quite as reliable as many admissions routinely admitted under Rule 801(d)(2)(A). In fact that subsection of the Rule does not even require that the declarant manifest his belief in the truth of the admission. Under Rule 403 the court can exclude a plea to a misdemeanor made under conditions that suggest its untrustworthiness. But unless those conditions appear, the court will admit such a plea and the accompanying allocution as an admission of a party (internal citation omitted).

Hancock, 958 F.2d at 1371.

In this case, Defendant's state guilty plea is excluded from the definition of hearsay as an admission by a party opponent under FRE 801(d)(2)(A). Moreover, there is nothing in the record to suggest that the guilty plea and the admissions made therein were untrustworthy. Defendant's guilty plea is admissible as a non-hearsay admission and is relevant because it goes to the facts and circumstances surrounding Ross' arrest and the discovery of the firearm in the glove box. Additionally, because the probative value of the evidence is not substantially outweighed by the danger of undue prejudice, the evidence is not subject to exclusion under FRE 403.

## V.     Conclusion

For the reasons stated herein, **IT IS ORDERED AS FOLLOWS**:

1.    Defendant's Motion in Limine, or in the Alternative, Motion to Suppress Evidence relating to his guilty plea in state court (Doc. # 59) be, and is hereby **DENIED**;

2.    The DVD of the July 1, 2004 Ohio state court guilty plea before Judge Guy Guckenberger shall be made part of the record as Exhibit One to this Memorandum Opinion and Order.

This 1st day of February, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\US.SDOH\Ross\order denying motion in limine.wpd